Case 7:07-cv-05926-CS    Document 16-2    Filed 06/30/2008    Page 1 of 20

**Exhibit 1**

*Serving the Hudson Valley*

Affiliated with
International Brotherhood of Teamsters, AFL-CIO

P.O. Box 2097 • Newburgh, New York 12550

Tel: (845) 564-5297   Email: team445@frontiernet.net   Fax: (845) 564-2120

FRED SMIT
Secretary - Treasurer

## MEMORANDUM OF AGREEMENT
## BY AND BETWEEN
## MID-HUDSON STEEL CORPORATION
## AND
## LOCAL UNION No. 445
## AFFILIATED WITH
## INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
## AFL-CIO

The Collective Bargaining Agreement between the parties that expires on December 31, 2002, will be extended for a 3-year period ending December 31, 2005 with the following increases and changes.

|         |    | 01/01/03 | 01/01/04 | 01/01/05 |
|---------|----|----------|----------|----------|
| Wages   | $  | 0.40/hr  | 0.40/hr  | 0.40/hr  |
| Pension | $  | 0.10/hr  | 0.10/hr  | 0.10/hr  |
| Welfare | $  | 0.10/hr  | 0.10/hr  | 0.10/hr  |

Annual Bonus of $150.00 to be paid January 1st of every year.

Summer help may be utilized only during the period of May 15th to August 15th each year.

In the event summer help is utilized, the wage portion of the contract will be reopened for negotiation January 1st of the following year.

Summer help if to be paid at the current rate of pay of a new hire. No Pension & Welfare contributions shall be made on behalf of summer help; unless such summer help works outside the aforementioned period (May 15th-Aug. 15th).

All other terms and conditions of the Collective Bargaining Agreement expiring on December 31, 2002 will remain in effect.

FOR MID-HUDSON STEEL CORP.          FOR LOCAL UNION No. 445

BY: _____       BY: _____

TITLE: G.M.                          TITLE: Vice Pres. ☉ O.H.

DATE: 1-31-03                        DATE: 1/31/03




# COLLECTIVE BARGAINING AGREEMENT

By and Between

Teamsters Local 445, I.B.T.
PO Box 2097
Newburgh, NY 12550

and

Mid Hudson Steel Corp.
Route 302
Middletown, NY 10940



RECEIVED
MAY 1 9 2000

**January 1, 2000 through December 31, 2002**

## INDEX

| ARTICLE | PAGE |
|---|---|
| Preamble | 1 |
| Article I – Recognition | 1 |
| Article II – Hours and Wages | 2 |
| Article III – Holidays | 2 |
| Article IV – Vacation | 2, 3 |
| Article V – Outside Equipment | 3 |
| Article VI - Union Security & Probation | 3, 4 |
| Article VII – Protective Legislation | 4 |
| Article VIII – Picket Lines | 4 |
| Article IX – Shop Stewards | 4 |
| Article X – Seniority | 5 |
| Article XI – Layoff and Recall | 5 |
| Article XII – Discharge & Discipline | 5 |
| Article XIII – No Strike & Arbitration | 6 |
| Article XIV – Leave of Absence & Sick Leave | 6 |
| Article XV – Military Service | 6 |
| Article XVI – Applicable Laws | 6 |
| Article XVII – Jury Duty | 7 |
| Article XVIII – Bereavement Leave | 7 |
| Article XIX – Rights of Management | 7 |
| Article XX – Non-Discrimination Clause | 7 |

| ARTICLE | PAGE |
|---|---|
| Article XXI – Termination | 7,8 |
| Article XXII – Severance Pay | 8 |
| Schedule 'A" – Iron and Steel Supply Yards | 9,10,11,12 |
| Schedule "B" – Wages | 13 |
| Schedule "C" – Warehouse Rules | 14,15 |

AGREEMENT made as of the 1st day of January, 2000, by and between:

MID HUDSON STEEL CORPORATION,
Maintaining its principal place of business at:
Route 302
Middletown, New York,

(Hereinafter referred to as the "Employer"), and

LOCAL UNION NO. 445, I B T
Located at
15 Stone Castle Road, PO Box 2097
Newburgh, New York, 12550

(Hereinafter referred to as the "Union"), for and in behalf of the employees now employed and hereinafter to be employed by the Employer during the term of this Agreement and hereafter referred to as the "Employees".

WITNESSETH:

WHEREAS, the parties hereto are desirous of improving the labor relations between the Employer, Employees and the Union; and

WHEREAS, the parties hereto are desirous of establishing a basic understanding relative to the terms and conditions of employment of the employees by the Employer;

NOW, THEREFORE, in consideration of the premises and promises set forth herein, and the benefits and advantages accruing or expected to accrue by reason thereof, the said parties hereby, for themselves, their respective successors, legal assigns and representatives, agree as follows:

### ARTICLE I. RECOGNITION

A.   This Agreement shall apply to all employees of the Employer now or during the term of this Agreement engaged in construction and supply work as chauffeurs, drivers, crane operators, machine operators, warehousemen and helpers.

B.   The Employer recognizes the Union as the sole and exclusive bargaining agent for said employees during the term of this Agreement and will not enter into any other Agreement with anyone relating to this subject matter of any provisions or term of this Agreement.

C.   No waiver, variation or modification of any term or provision of this Agreement shall be effective unless agreed upon in writing by the Employer and the Union.

## ARTICLE II. HOURS AND WAGES

A.    The minimum of hours of work and other provisions set forth in Schedule "A" annexed hereto are by reference made a part of this Agreement.

B.    The minimum rates of pay as set forth in Schedule "B" annexed hereto are by reference made a part of this Agreement.

## ARTICLE III. HOLIDAYS

A.    Any employee ordered to work on Sunday or the following holidays shall receive two (2) days' pay. Overtime to be paid at the rate of double overtime:

| New Years Day | Washington's Birthday |
| Good Friday | Memorial Day |
| Independence Day | Labor Day |
| Thanksgiving Day | Day After Thanksgiving |
| Christmas Day | Day After Christmas |

B.    Any employee working or paid three (3) days in any calendar week during which one of the above holiday occurs, but who has not ordered for work on the holiday, shall nevertheless, receive one (1) day's pay for this holiday. This provision shall also apply if a holiday falls on a Saturday.

C.    Any employee who is ordered to work on a Saturday that is a holiday shall be paid at the rate of two and one half (2 ½) times the regular hourly rate of pay.

D.    Any Employee who is ordered to work on a Sunday that is a holiday shall be paid at the rate of three (3) times the regular hourly rate of pay.

## ARTICLE IV. VACATION

A.    The qualifying period for vacations shall be June 1st to May 31st. All Employees working under this Agreement who have worked for the Employer for one (1) year, but less than three (3) years, shall receive one (1) week's vacation with pay in advance. All Employees working under this Agreement with less than one (1) year's service shall receive one (1) day's vacation for each thirty-five (35) working days with a maximum of five (5) vacation days with pay in advance.

B.    All employees who have worked for the Employer for three (3) years or more shall be entitled to two (2) weeks' vacation with pay in advance.

C.    All employees who have worked for the Employer for five (5) years or more shall be entitled to three (3) weeks' vacation with pay in advance.

D.    All employees who have worked for the Employer for fifteen (15) years or more shall be entitled to four (4) weeks vacation with pay in advance.

2

E.  Vacation shall be taken during the period of June 1st to August 31st unless otherwise agreed between the Employer and the Union.

F.  Vacations shall be given according to the seniority of employees.

G.  Employees that leave the Company shall be paid vacation time on a pro rata basis.

## ARTICLE V. OUTSIDE EQUIPMENT

Employees on the seniority list shall not be laid off due to the Employer hiring outside equipment in a manner contrary to past or established practice when the Employer has usable and appropriate equipment available for the same work. The Employer may hire trucks and drivers only after the Employer's available trucks and drivers on the seniority list are working.

## ARTICLE VI. UNION SECURITY AND PROBATION

A.  All present employees who are members of the Union on the effective date of this Agreement shall remain members of the Union in good standing as a condition of employment.

B.  All present employees who are not members of the Union and all employees hired hereafter shall become and remain members of the union in good standing as a condition of employee on and after the 30th working day following the beginning of their employment or on and after the 30th day following the effective date of this Agreement, whichever is the later.

C.  When the Employer needs additional men, he shall give the Union equal opportunity with all other sources to provide suitable applicants, but the Employer shall not be required to hire those referred by the Union.

D.  Upon notice from the Union that any employee who thirty (30) working days from the date of first employment, has failed to tender the periodic dues and initiation fees uniformly required as a condition of acquiring and retaining membership, the Employer agrees to discharge or suspend such employee within seven (7) days after receipt of written notice from properly authorized officials of the Union.

E.  A new employee shall work under the provisions of this Agreement on a trial basis for thirty (30) working day period. During that time he may be discharged without further recourse.

F.  When an employee has worked thirty (30) days, he shall be placed on the seniority list as of his first day of hire. No employee can have seniority with more than one (1) employer.

G.  The Employer agrees to deduct from all regular employees covered by this Agreement initiation fees and dues and agrees to remit to the Union all such deductions prior to the end of the month for which the deduction is made. Where laws require written authorization by the employee, the same is to be furnished in the form required.

H. Supervisory personnel of the Employer shall be restricted from performing the work which is recognized as the work of the employees covered by this Agreement, except for the purpose of instruction and checking and taking inventory.

## ARTICLE VII. PROTECTIVE LEGISLATION

The Employer agrees to cooperate toward the prompt settlement of employee on-the-job injury claims when such claims are due and owing. Employers shall protect employees with Worker's Compensation Insurance, Social Security and Unemployment Insurance, as required by federal and state laws.

## ARTICLE VIII. PICKET LINES

A. It shall not be a violation of this Agreement, and it shall not be cause for discharge or disciplinary action, in the event an employee refuses to enter upon any property involved in a lawful labor dispute or refuses to go through or work behind any primary picket lines, including picket lines at his Employer's place of business.

B. For the purpose of this Agreement, a labor dispute and picket line(s) means a lawful strike conducted by employees against their Employer.

## ARTICLE IX. SHOP STEWARDS

A. The Employer recognizes the right of the Union to designate job stewards and alternates.

B. The authority of job stewards and alternates so designated by the Union shall be limited to, and shall not exceed, the following duties:

　　1. the investigation and presentation of grievances in accordance with the provision of the collective bargaining agreement;

　　2. the collection of dues when authorized by appropriate local union action;

　　3. the transmission of such messages and information which shall originate with, and are authorized by the local union or its officers, provided such messages and information:

　　　　a. have been reduced to writing, or

　　　　b. if not reduced to writing, are of a routine nature and do not involve work stoppages, slowdown, refusal to handle goods, or any other interference with the Employer's business.

C. Any employee who is absent because of proven illness or injury shall maintain his seniority.

D. A driver shall not exercise his seniority to bump a regular shop employee on overtime during the Monday through Friday workweek unless he is working in the shop for that day but will be able to work the overtime when he comes off the road on a seniority basis should the Company deem additional employees.

4

## ARTICLE XI. LAYOFF AND RECALL

A. When it becomes necessary to reduce the working force, the last man on the seniority list should be laid off first and when the force is again increased, the men are to be returned to work in the reverse order in which they are laid off.

B. In the event of a recall, the laid-off employees shall be given notice of recall by telegram, registered or certified mail, sent to the address last given the Employer by the Employee. Within four (4) calendar days after tender of delivery at such address of the Employer's notice, the employee must notify the Employer by telegram, registered or certified mail, of his intent to return to work within the seven (7) calendar days after date of tender of delivery of the recall notice, unless it is mutually agreed that the employee need not return to work within the seven (7) calendar day period. In the event that the employee fails to comply with the above provisions, he shall lose all seniority rights under this Agreement and shall be considered a voluntary quit.

## ARTICLE XII. DISCHARGE AND DISCIPLINE

A. The Employer shall neither discharge nor suspend an employee without just cause. When an employee is discharged or suspended, the Employer shall notify the Union and the shop steward in writing.

B. A discharged employee must notify the Union in writing within two (2) working days of his desire to appeal the discharge or suspension. A discharged employee shall have the right to notify his shop steward before leaving the Employer's warehouse.

C. Notice of appeal from discharge or suspension must be made in writing to the Employer from the Union within five (5) days from date of discharge or suspension. If the Employer and the Union are unable to agree as to the settlement of the case, then it shall be considered a dispute and handled in accordance with Article XIII of this Agreement.

D. Upon discharge, the Employer shall pay all money due to the employee. Upon quitting, the employer shall pay all money due to the employee on the pay day in the week following such quitting. Earned vacation time shall be included in such payments.

E. The Employer may establish such "Company Rules" as it deems necessary or desirable (as per attached Schedule "C"), provided that such rules are not in conflict with the terms and provisions of this Agreement, and further provided that such "Company Rules" are first given to the Union. Any controversy between the Employer and the Union concerning the establishment or observance of Company Rules shall be considered a dispute and handled in accordance with Article XIII.

## ARTICLE XIII. NO STRIKE – ARBITRATION

A. There shall be no work stoppage or slowdown without first exhausting the remedies provided in this Agreement.

B. Any dispute, claim, question or difference arising out of or relating to this Agreement may be submitted to arbitration upon the initiation of either party, to the New York State Board of Mediation and the parties agree to abide by and perform the award.

## ARTICLE XIV

A. LEAVE OF ABSENCE - Any employee desiring a leave of absence from his employment shall secure written permission from both the Union and the Employer. During the period of absence, the employee shall not engage in gainful employment in the same industry or classifications covered by this Agreement. Failure to comply with this provision shall result in the complete loss of seniority rights for the employee.

B. SICK LEAVE - All employees shall receive four (4) days sick leave with pay each contract year. Sick leave pay is payable for days falling within the work week only.

Unused sick leave for the contract year will be computed at the end of the last calendar week in December and employees will be reimbursed during the first (1st) week in January.

## ARTICLE XV

Employees entering the military service in any branch of Armed Forces of the United States shall, when discharged from service, be entitled to re-employment by the Employer in accordance with all the applicable provisions of law pertaining hereto.

## ARTICLE XVI. APPLICABLE LAWS

In the event that any provisions of the body of this Agreement or in Schedule "A" or "B" attached hereto are in conflict with a provision or provisions of law, it is understood and agreed that such provision shall not be operative so long as such conflict exists, but shall become operative immediately upon such provision or provisions of law being repealed or determined to be unconstitutional or inapplicable. If, for the reason stated above, any provision hereof shall become inoperative, the Union shall have the right to submit to arbitration hereunder its demands for such further and additional provisions as may be fair and reasonable under the circumstances and the decision of the arbitrator shall be final and binding upon the parties.

6

## ARTICLE XVII. JURY DUTY

A.  A regular employee, who has completed his probationary period with the Employer, who is called for service on jury duty, shall receive a full day's pay for each day of jury service provided however, that any money received by any such employee for any payment for such jury service shall be paid over to the Employer as reduction of the Employer's payment required hereunder, except automobile allowance. A full day's pay shall be as provided for holidays.

B.  Employees shall notify the Employer with forty-eight (48) hours after they receive a notice of jury service. Failure to give such notice shall result in a forfeiture of all pay provided for in this Article.

## ARTICLE XVIII. BEREAVEMENT LEAVE

In case of death in an employee's family – (i.e, immediate spouse, mother, father, mother-in-law, father-in-law, sister, brother, children, grandparents and grandchildren) the employer shall grant such employee a maximum of three (3) days off with pay. Death certificates or other proof of death must be submitted to the Employer. The employee must have been employed by the Employer at least 60 days prior to such death.

## ARTICLE XIX. RIGHTS OF MANAGEMENT

All rights of management, except as limited by this Agreement, are reserved to the Employer.

## ARTICLE XX. NON-DISCRIMINATION CLAUSE

A.  The Employer and the Union agree not to discriminate against any individual with respect to hiring, compensation and other terms and conditions of employment because of such individual's race, color, religion, sex, national origin or age nor will they limit, segregate or classify employees in any way to deprive any individual employment opportunities because of race, color, religion, sex, national origin or age.

B.  Whenever any words are used in this Agreement in the masculine gender, they shall be construed as though they were also used in the feminine gender.

## ARTICLE XXI. TERMINATION

A.  This Agreement shall become effective as of January 1, 2000 and shall continue in full force and effect until December 31, 2002, and further continue in effect from year to year thereafter unless otherwise rescinded, modified or changed, after written notice by either party at least sixty (60) days prior to the expiration date.

B.  Any increase in wages is agreed upon as a result of negotiations pursuant to said notice shall be retroactive to the expiration date of this Agreement.

C.  The Union agrees that for the purpose of negotiations only, it will not withdraw its members for thirty (30) days after the expiration date of this Agreement.

IN WITNESS WHEREOF, the duly authorized representative of the parties hereto affix their hands and seals as of the day and year first above written.

### ARTICLE XXII SEVERENCE PAY

1.  Employees permanently released because of physical disability and/or old age, (except in the case of compensable disability incurred while working, for which they have been or are to be awarded permanent disability benefits by the Compensation Board) shall be entitled to receive same immediately upon such severance from the Employer. The acceptance of said severance pay shall be considered as binding and seniority rights shall terminate immediately.

2.  Employees who are permanently released from the Employer because of lack of work, and any layoff which shall continue for more than one (1) year (during part of which the employee is entitled to unemployment compensation from the Sate of New York may be considered permanent by the employee at the end of one (1) year period, and shall have the right to the expiration of one (1) year layoff to clam the full severance pay, to which he is entitled, and having claimed and having received same, the layoff becomes permanent and the employees shall be entitled to no further seniority rights, and the severance shall be considered complete.

The following schedule shall apply to all employees, entitled to a severance pay:

One (1) year but less than nine (9) years
- Two (2) 40 hours weeks base pay

Ten (10) years and over
- Three (3) 40 hours weeks base pay

**MID HUDSON STEEL CORPORATION**

BY:_____

TITLE:_____

**LOCAL UNION NO. 445, I.B.T.**

BY:_____

TITLE:_____

DATE:_____

8

## SCHEDULE "A"

## IRON AND STEEL SUPPLY YARDS

1. The work day shall consist of eight (8) consecutive hours. The work week shall consist of five (5) consecutive days Monday through Friday. Time and one-half the regular straight rate of pay shall be paid by the Employer to the Employee for all hours worked after eight (8) in any one (1) day, and for all hours worked after forty (40) in any one week. There shall be no pyramiding of overtime. All work by the employees shall be paid on a half-hour basis. The Employer has the right to require employees to work at least two (2) hours per day of overtime upon reasonable notice to employees except in an emergency.

2. Employee's regular starting time is to commence at 7:00 a.m. All work done before the regular starting time on Sunday or a holiday shall be paid for at the rate of double the hourly rate of pay for that day. All work done before 6:00 a.m. on any other day shall be paid for at the rate of time and one half the hourly rate of pay for that day. On any date that an employee is required to start work at 8:00 a.m. at any hour thereafter, the starting time for such employee shall be considered as of 8:00 a.m.

3. Any employee who starts work on any day, Monday through Friday, inclusive, shall receive not less than eight (8) hours pay at the rate of pay for that day unless the employee is the cause for less hours by arriving after the normal starting time or leaving before the normal quitting time.

    (a) Any employee who starts work on a Saturday that is not a holiday shall receive not less than four (4) hours pay at the rate of time and one-half the regular straight-time rate of pay.

    (b) Any employee who starts to work on Sunday that is not a holiday shall receive not less than eight (8) hours pay at the rate of double the regular straight-time hourly rate of pay.

4. The time of any employee shall be computed form the time he checks in at the Employer's garage, yard, or warehouse, and until checking out of same after a day's work.

5. In the event that an employee works on any part of a day in a higher bracket or classification of work, he shall be paid for that day at the rate of pay prevailing for the higher bracket or classification of work he performs that day.

6. Whenever the Employer has to use two (2) or more shifts of employees in any twenty-four (24) hour period, the starting time, working conditions and wage rates for such shifts shall be agreed upon by and between the representatives of the Employer and the Union. After an agreement is reached by and between the parties, said agreement shall be attached to this Schedule "A" and it shall be made a part of this Agreement.

7. Any employee being assigned to work which necessitates his being away from his home terminal, garage, or warehouse overnight shall be compensated for all board and lodging monies spent on such work.

9

8. Time clocks and time books are to be maintained at Employers garage or other establishment where employees report to start and end days work. All employees shall be paid in full weekly. Employer shall pay employees cash or arrange with a local bank to cash pay checks.

(a) All employees shall receive one (1) hour off for lunch, which shall be some time between 11:00 a.m. and 1:00 p.m. Any employee ordered to work during his lunch period shall be paid for the lunch period at the overtime rate of pay for that day and shall have twenty (20) minutes to eat, at no lost time. Lunch hour may be staggered.

9. The employer shall maintain time and pay records at Employer's principal place of business showing compliance with the foregoing provision, and upon notice, made available said records for the inspection of Union representatives. Union representatives may visit the Employer's establishments to see that the provisions of this Agreement are being complied with by the Employer and the Employees.

10. (a) The Employer agrees to make contributions to the Trustees for Teamsters Local 445 Health and Welfare Fund located at Stone Castle Road, PO Box 2572, Newburgh, NY 12550, in the amounts provided for in Schedule "B" of this Agreement.

(b) The contributions shall be made by the Employer to the Fund on a basis of <u>maximum</u> of forty (40) hours per week.

(c) The contributions shall be made by the Employer to Fund by the Employer on a <u>minimum</u> of eight (8) hours per day on behalf of <u>all</u> employees who commence work on any day even though the hours worked on any day are less than eight (8) hours.

(d) It is understood and agreed that all paid holidays and all paid vacations each year as are contained in the Agreement as well as time spent by an employee while out of work on Worker's Compensation (up to six (6) months while on compensation) shall be considered time worked, and such contributions shall be made to the Fund on behalf of all such employees.

(e) The Employer agrees to remit monthly the amount of contribution payable to the Fund on behalf of all employees on the appropriate forms provided by the Union to the Employer indicating in detail all of the information requested thereon. The Employer shall remit and pay the sums referred to herein not later than the tenth (10th) day of the current month for the preceding month's payroll.

(f) The Trustees of the Local 445 Welfare Fund herein above referred to are those designated under the Agreement and Declaration of Trust of the Fund including all amendments thereto and are herein specifically incorporated by reference. The contributions paid to the Local 445 Welfare Fund shall be used to provide social insurance and other benefits for the eligible employees and their dependents as might from time to time be determined by the Trustees of the Fund, as well as all expenses of the administration of the Fund. The phrase "eligible employees" may be deemed to include employees of the Fund, employees of the Union, retired employees, and disabled employees, subject to the rules and regulations promulgated by the Trustees.

(g) Failure on the part of the Employer to pay the Trustees of the Fund the amounts due from him or it shall be deemed a breach of this Agreement by the Employer and the Union shall

10

have a right to enforce the collection thereof from the Employer in the same manner as payment of wages directly due the employees of the Employer.

Nothing contained herein shall restrict the Union's right upon proper notice to the Employer to take economic action for failure on the part of the Employer to make the contributions referred to herein.

12. (a) The Employer shall not require employees to operate any equipment that is not a safe operating condition or equipped with the safety appliances prescribed by law. It shall not be a violation of this Agreement where employees refuse to operate such equipment, unless such refusal is obviously unjustified.

(b) Employees shall immediately, or at the end of their shifts, report all defects of equipment. Such reports shall be made on a suitable form furnished by the Employer and shall be made in multiple copies, one copy to the Employer, Union, and Employee. The Employer shall not ask or require any employee to operate any equipment that has been reported by any other employee as being in an unsafe operating condition; until same has been approved as being same.

13. (a) Any employee involved in an accident shall immediately report said accident and any physical injury sustained. When required by the Employer, the employee, before going off duty and before starting his next shift, shall make out an accident report in writing on forms furnished by the Employer and shall turn in all available names and addresses of witnesses to the accident. Such reports shall be made out on company time. Failure to comply with this provision shall subject such employee to disciplinary action by the Employer.

(b) When an employee is required to appear in any court for the purpose of testifying because of an accident he may have been involved in during working hours, such employee shall be reimbursed in full by the Employer for all earning opportunity lost because of such appearance, except in case of the employee's carelessness, recklessness and negligence and so found in court.

(c) The Employer shall furnish employees who are involved in accidents during working hours with bail bond and legal counsel and shall pay in full for same. Said bail bond legal counsel shall remain assigned to the employee until all legal action in connection with said accident is concluded, except in case of the employee's carelessness, recklessness and negligence and so found in court. This shall not apply to employees who are found guilty of drunken driving when involved in an accident.

(d) The Employer shall assume all responsibility for all court costs, legal fees and bail bond fees for any employee who is involved in an accident or accidents during working hours which result through court action against said employee, except as provided above.

14. Employees shall not be held responsible for vehicles not properly equipped to comply with the State Motor Vehicle Laws and shall be compensated for fines and time lost if summoned to court, etc., because of same. Employees shall not be held responsible for overloaded vehicles when instructed by the Employer. Whenever a driver is penalized because of such overload, the Employer shall bear all cost in connection with such overload penalty and shall pay all damages assessed against the employee, including accrued overtime, for delay and/or any lost earning opportunity that the

11

employee might suffer. In the event the employee shall suffer a revocation of his chauffeur's license because of violation of any laws by the Employer, the Employer shall provide suitable and continued employment for such employee at not less than his regular earnings at the time of revocation of his license, for the entire period of revocation of license, and the employee shall be reinstated in the seniority he held prior to the revocation of the driver's license after his driver's license is restored.

      15.    All regular employees covered by this Agreement shall be paid in full each week. Not more than one (1) week's pay shall be held on an employee. Each employee shall be provided with a statement of gross earnings and an itemized statement of all deductions made for any purpose.

      16.    All regular employees covered by this Agreement will receive $~~475~~.00 [500.00 BB] on 1/1/2000, $500.00 on 1/1/2001 and $500.00 on 1/1/2002 in lieu of the Employer providing them with uniforms and safety equipment.

      17.    The Employer shall not enter into any agreement with his employees which in any way conflicts with the terms of this contract.

      18.    The Company agrees it will not change the current starting times for the duration of the agreement.

      During the term of this Agreement, the Employer shall not operate, maintain or conduct any establishment or place of business for the purpose of evading the terms of this Agreement.

MID HUDSON STEEL CORPORATION

BY: _[signature]_

TITLE: _Gen'l Mgr_

TEAMSTERS LOCAL 445, IBT

BY: _William J. Berge_

TITLE: _Vice President/B.A._

DATE: _5-19-00_

## SCHEDULE "B"

WAGES:

The minimum wage rates to be paid by the Employer to the Employees are as follows:

|  | 1/1/2000 | 1/1/2001 | 1/1/2002 |
|---|---|---|---|
| **Employees with over 30 years service as of 1/1/2000** | | | |
| Warehousemen | $12.10 | $12.50 | $12.90 |
| Drivers | $12.10 | $12.50 | $12.90 |
| Welfare per hour | $ 2.90 | $ 2.90 | $ 2.90 |
| Pension per hour | $ 3.80 | $ 3.80 | $ 3.80 |
| **All Other Employees (less than 30 years service as of 1/1/2000)** | | | |
| Warehousemen | $12.60 | $12.85 | $13.10 |
| Drivers | $12.60 | $12.85 | $13.10 |
| Welfare per hour | $ 3.00 | $ 3.10 | $ 3.20 |
| Pension per hour | $ 3.00 | $ 3.20 | $ 3.40 |

**Lead Man:** Base wages plus $1.50 per hour effective May 1, 2000.

## NEW HIRE HOURLY RATES

New Hire rate shall be $2.00 per hour lower than the prevailing rate at the time of hire and increase $1.00 per hour every 6 months till the contract amount is equaled.

13

## SCHEDULE "C"

## WAREHOUSE RULES

Any employee who violates any of the following rules shall subject himself to possible disciplinary action including discharge.

RULE 1:   All employees are expected to use proper safety equipment furnished by the Employer while they are working.

RULE 2:   Any employee who is injured while at work, or on Employer premises, shall immediately report said injury and the circumstances thereof to his Forman and then to the person in charge of the First Aid Room.

RULE 3:   Regular and prompt attendance shall be required of every employee. Frequent absence and tardiness without a satisfactory excuse will not be permitted.

RULE 4:   Employees unable to appear for work as scheduled because of illness or injury or other recognized excuse must give notice of their absence or contemplated tardiness to their Foreman or to the personnel office by telephone or telegram prior to the start of their shift or, in no case, beyond a reasonable period of time after the start thereof, stating the reason for such absence or tardiness and the probable duration thereof.

RULE 5:   All employees shall promote clean and sanitary conditions throughout the plant premises and shall refrain from disposing of any kind of waste materials in any place except in waste cans provided for that purpose.

RULE 6:   In addition to duty, gambling on Employer premises, or idling during working hours and sleeping on the job on Employer premises will not be tolerated.

RULE 7:   All employees shall punch their time clock cards when entering and leaving the plant. No employees will punch, deface, or in any way interfere with anyone else's time card for any reason whatsoever.

RULE 8:   Stopping work before the normal quitting time except where specifically provided for either by the contract or through permission of his Foreman or Supervisor, will not be tolerated.

RULE 9:   Remaining on the premises longer than necessary after working hours will not be permitted.

RULE 10:  Selling, distributing, soliciting or collecting contributions for any purpose on Employer premises without permission during working hours will not be tolerated. Such permission shall not be unreasonably withheld.

RULE 11:  There shall be no waste of materials, tools or equipment or abuse of same, or the willful or negligent destruction of Employer property or of the property of fellow employees.

14

RULE 12:   No employee shall be permitted to report to work under the influence of alcohol nor will any employee be permitted to bring alcoholic beverages of any sort into the plant.

RULE 13:   There will be no stealing, either from fellow employees or of Employer property.

RULE 14:   Fighting, or attempt to threat of bodily injury to any other employee while on Employer property, or horseplay on Employer property will not be permitted.

RULE 15:   Taking Employer property from the premises without signed permission from his Foreman or Supervisor will not be permitted.

RULE 16:   Possessing firearms or weapons of any kind on Employer premises will not be allowed at any time.

RULE 17:   No employee shall leave his designated working area without notifying his foreman or Supervisor. The permission of the Foreman or Supervisor will be required except by stewards or committeemen in the performance of their official duties under the contract.