UNITED STATES DISTRICT COURT                                        ECF Case
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ADRIAN HUFF, as Chairman of the Board of Trustees
of TEAMSTERS LOCAL 445 FREIGHT DIVISION
PENSION FUND,

                           Plaintiff,         Civil Action No. 07 Civ. 5926
                                             (CLB)(MDF)
     - against -

MID-HUDSON STEEL CORP., GRAMMAR,
DEMPSEY & HUDSON, INC., BRIDGEPORT STEEL
CO., BUELL SPECIALTY STEEL CO., PABRICO
STEEL FABRICATORS INC., ZINC CONSTRUCTION
CORP., and AIROTRAX, INC.,

                           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

                                             Sapir & Frumkin LLP
                                           Attorneys for Plaintiff, Adrian Huff, as
                                           Chairman of the Board of Trustees of
                                           Teamsters Local 445 Freight Division
                                           Pension Fund
                                           399 Knollwood Road, Suite 310
                                           White Plains, New York 10603
                                           (914) 328-0366

*On the Brief*:

    William D. Frumkin, Esq.
    Scott R. Abraham, Esq.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    POINT I. THIS COURT MUST GRANT SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF BECAUSE DEFENDANT FAILED TO PAY INTERIM WITHDRAWAL LIABILITY PAYMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.    Summary Judgment Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.    Summary Judgment Against Mid-Hudson Should Be Granted. . . . . . . . . . . . . . . 7

        C.    Summary Judgment Against The Defendants Under Common Control With Defendant Mid-Hudson Should Be Granted. . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    POINT II. PLAINTIFF IS ENTITLED TO INTEREST, LIQUIDATED DAMAGES, ATTORNEY'S FEES AND COSTS ON UNPAID INTERIM WITHDRAWAL LIABILITY PAYMENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**TABLE OF AUTHORITIES**

*Cases*

*Trs. of the Amalgamated Ins. Fund v. Steve Petix Clothier Inc.*, 2004 U.S. Dist. LEXIS
     418 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Amalgamated Ins. Fund v. Steve Petix Clothier Inc.*, U.S. Dist. LEXIS 418
     (S.D.N.Y. Jan. 15, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L. Ed. 2d 202
     (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*,
     522 U.S. 192, 118 S.Ct. 542, 139 L. Ed. 2d 553(1997) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Caleb v. Smith & Son, Inc. v. Amalgamated Ins. Fund*, 1991 U.S. Dist. LEXIS 13903
     (S.D.N.Y. Oct. 2, 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Central States Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.3d 1339 (7th Cir. 1992) . . . . 9

*DeSantis v. Deutsche Bank Trust Co. Ams., Inc.*, 501 F. Supp. 2d 593 (S.D.N.Y. 2007) . . . . . . . 7

*I.L.G.W.U. Nat'l Ret. Fund v. ESI Group, Inc.*, 92 Civ. 0597, 2002 U.S. Dist. LEXIS
     8614 (S.D.N.Y. May 15, 2002), *aff'd I.L.G.W.U. Nat'l Ret. Fund v. Meredith Gray,
     Inc.*, 2003 U.S. App. LEXIS 26271 (2d Cir. Dec. 24, 2003) . . . . . . . . . . . . . . . . . . . . . . 7

*I.L.G.W.U. Nat. Retirement Fund v. Gramercy Mills, Inc.*, 1994 U.S. Dist. LEXIS 15312,
     No. 90 Civ. 3552, 1994 WL 592226, at *1 (S.D.N.Y. Oct 26, 1994) . . . . . . . . . . . . . . . 7

*I.L.G.W.U. Nat'l Ret. Fund v. Meredith Gray, Inc.*, 2003 U.S. App. LEXIS 26271
     (2d Cir. Dec. 24, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*I.L.G.W.U. Nat'l Ret. Fund v. Vaco Holding Co.*, 950 F.Supp. 598 (S.D.N.Y. 1997) . . . . . . . . . 7

*Nat'l Pension Plan of the UNITE HERE Workers Pension Fund v. Swan Finishing Co.*, 2006
     U.S. Dist. LEXIS 28281 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*NYSA-ILA Pension Trust Fund by & Through Capo v. Lykes Bros.*, 1997 U.S. Dist. LEXIS
     11869 (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Rao v. Prest Metals*, 149 F.Supp. 1 (E.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ret. Fund of Fur Mfg. Indus. v. Strassburg and Tama, Inc.*, 1989 U.S. Dist. LEXIS 8988
    (S.D.N.Y. Jul. 21, 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Ret. Fund of Fur Mfg. Industry v. Getto & Getto, Inc.*, 1989 U.S. Dist. LEXIS 9190
    (S.D.N.Y. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

***Statutes***

29 U.S.C. § 1001 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
29 U.S.C. § 1104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
29 U.S.C. § 1132(g)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
29 U.S.C. § 1381 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7
29 U.S.C. § 1381(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
29 U.S.C. § 1382 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7
29 U.S.C. § 1382(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
29 U.S.C. § 1383(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
29 U.S.C. § 1391 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8
29 U.S.C. § 1399 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
29 U.S.C. § 1399(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 8, 11
29 U.S.C. § 1399(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
29 U.S.C. § 1399(b)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
29 U.S.C. § 1399(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
29 U.S.C. § 1399(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9
29 U.S.C. § 1399(c)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2
29 U.S.C. § 1401(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
29 U.S.C. § 1401(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9
29 U.S.C. § 1451 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
29 U.S.C. § 1451(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

***Federal Rules of Civil Procedures***

Fed.R.Civ.P. R. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
Fed.R.Civ.P. R. 56(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**PRELIMINARY STATEMENT**

Plaintiff Adrian Huff, as Chairman of the Board of Trustees of Teamsters Local 445 Freight Division Pension Fund (the Fund), commenced this action for collection of payment of the entire amount of the assessed withdrawal liability to the Fund, pursuant to § 4219(c)(5) of ERISA, 29 U.S.C. § 1399(c)(5), less any monthly payments received from Defendant with interest thereon, plus liquidated damages, attorney's fees and costs against Defendant Mid-Hudson Steel Corp. ("Mid-Hudson"). Plaintiff subsequently filed a First Amended Summons and Complaint against Defendants Mid-Hudson and Grammar, Dempsey & Hudson ("GDH") seeking collection of payment of the entire amount of the assessed withdrawal liability to the Fund, less any monthly payments received from Defendants with interest thereon, plus liquidated damages, attorney's fees and costs. Thereafter, Plaintiff filed a Second Amended Summons and Complaint against Defendants Mid-Hudson, GDH, Bridgeport Steel Co. ("Bridgeport"), Buell Specialty Steel Co. ("Buell"), Pabrico Steel Fabricators, Inc. ("Pabrico"), Zinc Construction Corp. ("Zinc"), and Airotrax, Inc. ("Airotrax"), seeking same. Plaintiff now moves for summary judgment for monies owed to the Fund pursuant to the Employee Retirement Income Security Act (1974) (ERISA), as amended by the Multiemployer Pension Plan Amendments Act (1980) (MPPAA), 29 U.S.C. §§ 1001 *et seq.*

Pursuant to the MPPAA, 29 U.S.C. § 1381, employers who have withdrawn from a multiemployer pension plan are obligated to make payment of their pro rata share of the plan's unfunded vested liability. Once the multiemployer pension plan has determined that the employer has withdrawn, it must assess withdrawal liability against the employer. Thereafter, the plan is required to notify the withdrawing employer of the amount of the liability and demand the payment

1

from the employer in accordance with a schedule of liability payments. 29 U.S.C. §1399(b)(1)(A). Notwithstanding any challenge raised by the employer to the withdrawal liability assessed, the employer is strictly obligated to make payments of interim withdrawal liability payments. 29 U.S.C. § 1399(c)(2).

In the instant case, although the Fund complied with its statutory obligation to send to Mid-Hudson the notice and demand for withdrawal liability payments, in full or interim withdrawal liability installments, Mid-Hudson failed or refused to make the twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, thirty-first, thirty-second, thirty-third, thirty-fourth, thirty-fifth, thirty-sixth, thirty-seventh, thirty-eighth, thirty-ninth, and fortieth withdrawal liability payments. In accordance with § 4219(c)(5) of the MPPAA and the Fund's plan rules and regulations, upon Mid-Hudson's failure or refusal to pay its withdrawal liability payments in accordance with the payment schedule, the Fund sent and Mid-Hudson received a written default notice which required Mid-Hudson to make payment of the entire assessed withdrawal liability to avoid serious legal consequences resulting from the continued failure to make payment. *See* 29 U.S.C. § 1399(c)(5). Despite its statutory obligation to make withdrawal liability payments, Mid-Hudson disregarded the law and failed to make the twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, thirty-first, thirty-second, thirty-third, thirty-fourth, thirty-fifth, thirty-sixth, thirty-seventh, thirty-eighth, thirty-ninth, and fortieth withdrawal liability payments owed to the Fund. *See* 29 U.S.C. §§ 1399(c), 1401(d). Mid-Hudson additionally failed to pay the entire assessed withdrawal liability. *See* 29 U.S.C. § 1399(c)(5).

Mid-Hudson has no legally defensible position, either in law or equity which can excuse its withdrawal liability payment obligation. Since Mid-Hudson has not paid its twenty-fifth to fortieth

2

withdrawal liability payments owed to the Fund and has no excuse or justification for its failure to make the withdrawal liability payments in violation of the MPPAA, the Fund is entitled to summary judgment. Further, because Defendants Mid-Hudson, GDH, Bridgeport, Buell, and Pabrico are under common control, withdrawal liability imposed on Mid-Hudson should also be imposed on GDH, Bridgeport, Buell, and Pabrico, and therefore, the Fund is entitled to summary judgment as against these Defendants.

## STATEMENT OF FACTS

Mid-Hudson entered into and was subject to a collective bargaining agreement (CBA) with Local Union No. 445, International Brotherhood of Teamsters of annexed AFL-CIO (the Union) wherein it was obligated to make contributions to Plaintiff, the Teamsters Local 445 Freight Division Pension Fund (the Fund), which is a third-party beneficiary under the CBA. *See* Memorandum of Agreement by and between Mid-Hudson Steel Corporation and Local Union No. 445 Affiliated with International Brotherhood of Teamsters, AFL-CIO, signed by the General Manager for Mid-Hudson, on January 31, 2003, attached as Exh. 1 to the Affidavit of William D. Frumkin Esq. In Support of Plaintiff's Motion for Summary Judgment as Against Defendants Mid-Hudson Steel Corp. and Grammar, Dempsey & Hudson, Inc. (hereinafter "Fumkin Aff.").

In or around August 2004, the Fund determined that Mid-Hudson completely withdrew from the Fund because it had permanently ceased to have an obligation to contribute to the Fund. *See* Correspondence, dated December 21, 2004, from Kellie Terese walker, Esq., to Mid-Hudson Steel Corp., attached as Exh. 2 to Frumkin Aff. As a result of Mid-Hudson's complete withdrawal from the Fund, the Fund assessed withdrawal liability against Mid-Hudson in the amount of $300,296.56. *Id.*

On or about December 21, 2004, pursuant to §§ 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1), the Fund sent a "Demand for Payment of Withdrawal Liability" to Mid-Hudson advising it that the Fund determined that it had effected a complete withdrawal from the Fund in or around August 2004 and requesting Mid-Hudson to pay a withdrawal liability of $300,296.56. *Id*. The Fund notified Mid-Hudson that, in accordance with §§ 4219(c)(1)(E)(2) and (3) of the MPPAA, Mid-Hudson's withdrawal liability was payable to the Fund in 160 equal monthly installments, each in the amount of $2,817.70, followed by a final payment of $1,366.98. *Id*. The first payment was due by January 31, 2005. *Id*. Mid-Hudson admitted that it received the December 21, 2004 letter. *See* Answer of Defendants Mid-Hudson Steel Corp., Grammar Dempsey & Hudson, Inc., Bridgeport Steel Co., Buell Specialty Steel Co., and Pabrico Steel Fabricators, Inc. with Affirmative Defenses, dated April 24, 2008, at ¶ 41, attached as Exh. 5 to Frumkin Aff.

Mid-Hudson remitted twenty-four monthly withdrawal liability payments, each in the amount of $2,817.70. The twenty-fourth and most recent payment, made by GDH on behalf of Mid-Hudson, was received on or about January 18, 2007. *See* Correspondence, dated January 18, 2007, from Rachel L. Horton to Sharon Molinelli, attached as Exh. 6 to Frumkin Aff. The twenty-fourth payment satisfied Mid-Hudson's withdrawal liability payment for December 2006. See Frumkin Aff., Exh. 5, ¶ 49. Mid-Hudson failed to remit its twenty-fifth and twenty-sixth monthly withdrawal liability payments, in the amounts of $2,817.70 each, due January 31, 2007 and February 28, 2007, for a total amount of $5,635.40. See Frumkin Aff., Exh. 5, ¶ 50.

On or about March 8, 2007, the Fund notified Mid-Hudson of its overdue withdrawal liability payment, and that it would be in statutory default if it failed to remit payment in full of its total withdrawal liability remaining due, or remit its twenty-fifth and twenty-sixth monthly

withdrawal liability payments, in the amounts of $2,817.70 each, within sixty days after receiving the late-payment notice letter. *See* Correspondence, dated March 8, 2007, from William F. Cusack III, Esq., to Keith R. McMurdy Esq., attached as Exh. 7 to Frumkin Aff.; See Frumkin Aff., Exh. 5, ¶ 51. In addition, the Fund notified Mid-Hudson that its failure to pay its withdrawal liability remaining due as prescribed therein would entitle the Fund to demand from Mid-Hudson immediate payment of the outstanding amount of the withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which is untimely paid. *See* Frumkin Aff., Exh. 5. Despite the Fund's notice to Mid-Hudson of its delinquent twenty-fifth and twenty-sixth withdrawal liability payments, Mid-Hudson failed to remit them. *See* Frumkin Aff., Exh. 5, ¶ 52.

Mid-Hudson failed to remit its twenty-seventh monthly withdrawal liability payment, in the amounts of $2,817.70, due March 31, 2007. *See* Frumkin Aff., Exh. 5, ¶¶ 53, 55. On or about April 26, 2007, the Fund notified Mid-Hudson of its overdue withdrawal liability payment, and that it would be in statutory default if it failed to remit payment in full of its total withdrawal liability remaining due, or remit its twenty-seventh monthly installment payment in the amount of $2,817.70 due March 31, 2007, within sixty days after receiving the late-payment notice letter. *See* Correspondence, dated April 26, 2007, from William F. Cusack III, Esq., to Keith R. McMurdy Esq., attached as Exh. 7 to Frumkin Aff.; See Frumkin Aff., Exh. 5, ¶ 54. In addition, the Fund notified Mid-Hudson that its failure to pay its withdrawal liability remaining due as prescribed herein would entitle the Fund to demand from Mid-Hudson immediate payment of the outstanding amount of the withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which is untimely paid. *See* Frumkin Aff., Exh. 7. Despite the Fund's notice to Mid-

Hudson of its delinquent twenty-seventh withdrawal liability payment, Mid-Hudson failed to remit it.  See Frumkin Aff., Exh. 5, ¶ 55.

The twenty-first, twenty-second, twenty-third and twenty-fourth withdrawal liability payments were made by GDH on behalf of Mid-Hudson.  *See* Frumkin Aff., Exh. 10.  To date, Mid-Hudson has not remitted payment in full of its total withdrawal liability remaining due, or remit its twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, thirty-first, thirty-second, thirty-third, thirty-fourth, thirty-fifth, thirty-sixth, thirty-seventh, thirty-eighth, thirty-ninth, or fortieth monthly withdrawal liability payments, in the amounts of $2,817.70 each.  *See* Frumkin Aff., Exh. 9, pp. 40:5-20.

## ARGUMENT

### POINT I

**THIS COURT MUST GRANT SUMMARY JUDGMENT IN FAVOR OF PLAINTIFF BECAUSE DEFENDANTS FAILED TO PAY INTERIM WITHDRAWAL LIABILITY PAYMENTS**

A.   **Summary Judgment Standard**

Summary judgment may be granted to a moving party on its application "if the pleadings, depositions, answers to the interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  Federal Rules of Civil Procedure (Fed.R.Civ.P.) R. 56(c).  "When the moving party has asserted facts which demonstrate that the non-moving party's claim cannot be sustained, the opposing party must 'set forth specific facts showing that there is a genuine issue for trial,' and cannot rest on 'mere allegations or denials' of the facts asserted by the movant." Fed.R.Civ.P. R. 56(e); *NYSA-ILA Pension Trust Fund by & Through Capo v. Lykes Bros.*, 1997 U.S. Dist. LEXIS

11869, *9 (S.D.N.Y. 1997). "The role of the court is not to weigh the evidence and decide the truth, but rather to determine whether or not there exists a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). "If the evidence is merely colorable. . .or is not significantly probative, summary judgment may be granted" to the moving party. *See Id.*; *DeSantis v. Deutsche Bank Trust Co. Ams., Inc.*, 501 F. Supp. 2d 593, 598 (S.D.N.Y. 2007).

### B.  Summary Judgment Against Mid-Hudson Should Be Granted

The MPPAA, which was enacted by Congress to protect the financial solvency of multiemployer pension plans, requires most employers who withdraw from underfunded multiemployer pension plans to pay "withdrawal liability." *See* 29 U.S.C. § 1381; *I.L.G.W.U. Nat'l Ret. Fund v. ESI Group, Inc.*, 92 Civ. 0597, 2002 U.S. Dist. LEXIS 8614, *10 (S.D.N.Y. May 15, 2002), *aff'd I.L.G.W.U. Nat'l Ret. Fund v. Meredith Gray, Inc.*, 2003 U.S. App. LEXIS 26271 (2d Cir. Dec. 24, 2003); *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 196, 118 S.Ct. 542, 547 (1997); *Nat'l Pension Plan of the UNITE HERE Workers Pension Fund v. Swan Finishing Co.*, 2006 U.S. Dist. LEXIS 28281, *10 (S.D.N.Y. 2006)("The purpose of withdrawal liability is to relieve the funding burden on remaining employers and to eliminate the incentive to pull out of a plan which would result if liability were imposed only on a mass withdrawal by all employers"). Withdrawal liability is termed as the employer's unfunded vested liability and is based on the present value of the multiemployer pension plan's assets as compared to the present value of the vested pension benefits which the plan is statutorily obligated to pay to the employer's bargaining unit employees. 29 U.S.C. §§ 1381, 1391.

In light of these concerns, the framework of the MPPAA was structured to provide

multiemployer pension plans with broad authority to collect withdrawal liability. *See* 29 U.S.C. §§ 1382, 1399, 1451; *ESI Group, Inc.*, 2002 U.S. Dist. LEXIS at *11. Under the MPPAA, the "broad authority" granted to plan sponsors mandates the plan sponsor to determine, assess and collect withdrawal liability owed to the plan by a withdrawing employer. *See* 29 U.S.C. § 1104; *Ret. Fund of Fur Mfg. Indus. v. Strassburg and Tama, Inc.*, 88 Civ. 6034, 1989 U.S. Dist. LEXIS 8988, *3 (S.D.N.Y. Jul. 21, 1989).

An employer incurs withdrawal liability when it, *inter alia*, has permanently ceased to have an obligation to contribute under the plan. 29 U.S.C. § 1383(a); *Lykes Bros., Inc*., U.S. Dist. LEXIS 11869 at *2-3. An employer's withdrawal liability is calculated as the employer's proportionate share of the plan's unfunded vested liability upon withdrawal from the multiemployer plan. 29 U.S.C. §§ 1381(b), 1391; *I.L.G.W.U. Nat'l Ret. Fund v. Vaco Holding Co*., 950 F.Supp. 598, 601-602 (S.D.N.Y. 1997). The withdrawal liability is assessed from the date the employer withdraws from the multiemployer plan. *Id.*

Once the multiemployer plan has determined that an employer has completely withdrawn from the plan, the plan must then "[(1)] determine the amount of the employer's withdrawal liability; [(2)] notify the employer of the amount of withdrawal liability and the payment schedule; and [(3)] demand payment according to the schedule." 29 U.S.C. §§ 1399(b)(1); *Amalgamated Ins. Fund v. Steve Petix Clothier Inc.*, 03 Civ. 4530, U.S. Dist. LEXIS 418, *7 (S.D.N.Y. Jan. 15, 2004).

An employer which has been assessed withdrawal liability by a multiemployer plan may request that the plan review its determination of withdrawal liability 29 U.S.C. § 1399(b)(2)(A). However, once the employer has been assessed withdrawal liability by a multiemployer plan and received from the plan a timely notice of and demand for payment of the withdrawal liability, it

remains obligated to pay the assessed interim withdrawal liability payments, regardless of any challenge or dispute the employer may have to the plan's assessment. 29 U.S.C. §§ 1399(b)(2)(A), 1399(c)(2); *Amalgamated Ins. Fund*, U.S. Dist. LEXIS 418 at *9 (An employer must pay the withdrawal liability on the schedule set by a plan "notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule").

Under the MPPAA, an employer who disputes a plan's assessed withdrawal liability may initiate arbitration subject to statutorily prescribed time limits. 29 U.S.C. § 1401(a)(1). However, even if an employer initiates arbitration, it remains obligated to pay the assessed interim withdrawal liability payments "until the arbitrator issues a final decision with respect to the determination submitted for arbitration." 29 U.S.C. §1401(d); *Amalgamated Ins. Fund*, 2004 U.S. Dist. LEXIS at *8-9. This statutory requirement that the employer remains obligated to make interim withdrawal liability payments sets up a "pay-first-question-later" statutory scheme. , 522 U.S. at 197; *Lykes Bros., Inc.*, 1997 U.S. Dist. LEXIS at *3 ("As part of the MPPAA, Congress created what has been termed a 'pay-first-question-later' formula for dealing with disputes over withdrawal liability"); *Rao v. Prest Metals*, 149 F.Supp. 1, 12 (E.D.N.Y. 2001) ("ERISA is a pay-first-question-later statute in that the employer must make withdrawal liability payments regardless of whether there is a dispute as to the assessment of liability"); *see also Central States Pension Fund v. Lady Baltimore Foods, Inc.*, 960 F.3d 1339, 1341 (7th Cir. 1992) (Disputes over withdrawal liability shall be resolved by arbitration and the employer may not defer payment pending arbitration).

Only a very narrow and limited exception exists to the MPPAA's "pay-first-question-later" statutory payment scheme. *Amalgamated Insurance Fund*, 2004 U.S. Dist. LEXIS at *10-12. The exception exempts an employer from its obligation to make interim withdrawal liability payments

9

if the plan's withdrawal liability claims are found to be "frivolous or not colorable." *Id.* This exception is applied only if an employer demonstrates both that a plan does not have a colorable claim against the employer and that the employer will be irreparably harmed by making interim withdrawal liability payments. *See Id.* "A claim . . . is not colorable if it is so insubstantial, implausible, or otherwise completely devoid of merit as not to involve a federal controversy." *Trs. of the Amalgamated Ins. Fund v. Steve Petix Clothier Inc.*, 2004 U.S. Dist. LEXIS 418, *14 (S.D.N.Y. 2004) (internal citation omitted).

Withdrawal liability extends to any trade or business under "common control" with the withdrawing employer. Section 4001(b)(1) of ERISA, 29 U.S.C. §§ 1301 (b)(1) provides in pertinent part: "All employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades and businesses as a single employer." The definition of a "control group" under the MPPAA tracks the definition under the Internal Revenue Code and includes parent-subsidiary relationships. *See* 26 U.S.C. §§ 1563(a). The control group provision allows a plan "to deal exclusively with the defaulting employer known to the fund, while at the same time assuring [itself] that legal remedies can be maintained against all related entities in the control group." *Bd. of Trs. of Trucking Employees of North Jersey Welfare Fund, INC-Pension Fund v. Kero Leasing Corp.*, 377 F.3d 288, 306 (3d Cir. 2004). Thus, when withdrawal liability is imposed on an employer, all other commonly controlled trades or businesses are liable as well. *See, e.g.*, *I.L.G.W.U. Nat. Retirement Fund v. Gramercy Mills, Inc.*, 1994 U.S. Dist. LEXIS 15312, No. 90 Civ. 3552, 1994 WL 592226, at *1 (S.D.N.Y. Oct 26, 1994); *Trustees of the Amalgamated Ins. Fund v. Saltz*, 760 F. Supp. 55, 57-58 (S.D.N.Y. 1991). Furthermore, under this section, each trade or business under common control is

jointly and severally liable for the withdrawal liability of the others. *See Central States, Southeast & Southwest Areas Pension Fund v. Ditello*, 974 F.2d 887, 889 (7th Cir. 1992).

Here, the Union and Mid-Hudson entered into a CBA wherein Defendant was obligated to make contributions to the Fund. In or about August 2004, the Fund determined that Mid-Hudson permanently ceased to have an obligation to contribute to the Fund. Resultantly, the Fund assessed withdrawal liability to Mid-Hudson.

On or about December 21, 2004, pursuant to §§ 4202(2) and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382(2) and 1399(b)(1), the Fund notified Mid-Hudson of the withdrawal liability assessment; amount of withdrawal liability; payment schedule; and Mid-Hudson's obligation to "pay-first-question-later" any issues it had with the withdrawal liability. Mid-Hudson received this notice and made twenty-four consecutive monthly withdrawal liability payments to the Fund. The twenty-fourth and most recent withdrawal liability payment was received by the Fund on or about January 18, 2007, and represented Mid-Hudson's withdrawal liability payment for December 2006. The twenty-first, twenty-second, twenty-third and twenty-fourth withdrawal liability payments were made by GDH on behalf of Mid-Hudson. *See* Frumkin, Aff., Exh. 9, pp. 45:20-46:8, 98:2-100:5; Frumkin Aff., Exh. 10.

Mid-Hudson failed to make its twenty-fifth and twenty-sixth withdrawal liability payments that were due on January 31, 2007 and February 28, 2007, respectively. On March 8, 2007, after Mid-Hudson missed the payments, the Fund notified Mid-Hudson of the overdue withdrawal liability payments, that it would be in statutory default if it failed to remit payment either in full or in monthly payments within sixty days of the notice. Mid-Hudson received this notice and failed or refused to pay the withdrawal liability either in full or in monthly payments..

Mid-Hudson failed to make its twenty-seventh withdrawal liability payment that was due on March 31, 2007. On April 26, 2007, after Mid-Hudson missed the payment, the Fund notified Mid-Hudson of the overdue withdrawal liability payment, that it would be in statutory default if it failed to remit payment either in full or in monthly payments within sixty days of the notice. Mid-Hudson received this notice and failed or refused to pay the withdrawal liability either in full or in a monthly payment.

To date, Defendant has failed or refused to remit payment in full of its total withdrawal liability remaining due, or remit its twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth, thirty-first, thirty-second, thirty-third, thirty-fourth, thirty-fifth, thirty-sixth, thirty-seventh, thirty-eighth, thirty-ninth, or fortieth withdrawal liability payments. *See* Frumkin, Aff., Exh. 7, pp. 40:5-20. Plaintiff's claim clearly involves a federal controversy so the "colorable" defense is not available to Defendant. Thus, Plaintiff is entitled to summary judgment as against Defendant Mid-Hudson.

### C. Summary Judgment Against The Defendants Under Common Control With Defendant Mid-Hudson Should Be Granted

Defendants Mid-Hudson, GDH, Bridgeport, Buell, and Pabrico are under common control. Specifically, James F. Hudson and J. Morgan Hudson are equal owners of GDH. *See* Frumkin, Aff., Exh. 9, pp. 59:25-60:5. GDH owned Mid-Hudson at all relevant times. *Id.* at pp. 20:24-21:3; 58:2-6. Bridgeport, Buell, and Pabrico are all wholly-owned subsidiaries of GDH. *Id.* at pp. 69:4-77:5. James F. Hudson and J. Morgan Hudson are officers of Mid-Hudson, GDH, Bridgeport, Buell, and Pabrico. *Id.* at pp. 69:4-77:5; 29:8-14; 60:23-25. The intermingling between companies is further demonstrated by GDH making withdrawal liability payments on behalf of Mid-Hudson. *Id.* at pp. 45:20-46:8, 98:2-100:5; Frumkin Aff., Exh. 10. All companies should be treated as employed by

a single employer and therefore, the withdrawal liability imposed on Mid-Hudson, should also be imposed on GDH, Bridgeport, Buell, and Pabrico as well. Thus, Plaintiff is entitled to summary judgment as against Defendants Mid-Hudson, GDH, Bridgeport, Buell, and Pabrico.

## POINT II

### PLAINTIFF IS ENTITLED TO INTEREST, LIQUIDATED DAMAGES, ATTORNEY'S FEES AND COSTS ON UNPAID INTERIM WITHDRAWAL LIABILITY PAYMENTS AND THE ACCELERATED TOTAL WITHDRAWAL LIABILITY REMAINING DUE

Under § 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), in addition to an award of the principal amount of unpaid interim withdrawal liability payments and the total withdrawal liability remaining due, Plaintiff is entitled to the interest accrued on the unpaid interim withdrawal liability payments and the total withdrawal liability remaining due, plus liquidated damages, costs and attorney's fees. In actions brought to compel an employer's payment of interim withdrawal liability, the employer's failure to make interim withdrawal liability payments is "treated in the same manner as delinquent contributions within the meaning of § 1145" of ERISA. 29 U.S.C. § 1451(b); *Ret. Fund of Fur Mfg. Industry v. Getto & Getto, Inc.*, 1989 U.S. Dist. LEXIS 9190, *3 (S.D.N.Y. 1989). Thus, "§ 1132(g)(2) [of ERISA] requires the award of reasonable fees and costs (as well as double interest or alternative liquidated damages, subject to specified limitations) to a prevailing fiduciary in its action for or on behalf of a plan to recover delinquent contributions under § 1145." *Caleb v. Smith & Son, Inc. v. Amalgamated Ins. Fund*, 1991 U.S. Dist. LEXIS 13903, *18 (S.D.N.Y. Oct. 2, 1991).

Based on Mid-Hudson's failure to make interim withdrawal liability payments, as well as Mid-Hudson's failure to pay the total withdrawal liability remaining due after its payments were accelerated, the Fund requests that the Court award interest, liquidated damages, attorney's fees and costs on the unpaid interim withdrawal liability payments, as well as the total withdrawal liability

remaining due, owed by Mid-Hudson to the Fund.

## CONCLUSION

For the foregoing reasons, the Fund is entitled to summary judgment against Mid-Hudson, GDH, Bridgeport, Buell, and Pabrico for all unpaid interim withdrawal liability payments, the accelerated total withdrawal liability remaining due, interest on the unpaid amount of interim withdrawal liability payments and the total withdrawal liability remaining due, liquidated damages, attorney's fees and costs, as well as such other and further relief as it may deem just and proper.

Dated: White Plains, New York  
       June 30, 2008

Respectfully submitted,

**SAPIR & FRUMKIN LLP**

By: /s/ William D. Frumkin  
William D. Frumkin (WF2173)  
Attorneys for Plaintiff  
399 Knollwood Road, Suite 310  
White Plains, New York 10603  
(914) 328-0366

F:\APPLICAT\WP\TEAMSTER\Mid Hudson Steel Corp\Litigation\Summary Judgment-Mid Hudson - 06-2008\Memorandum-Support MSJ.wpd\rlh

**CERTIFICATE OF SERVICE**

      I hereby certify that on June 30, 2008, a copy of Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt including:

        Keith R. McMurdy, Esq.
        Fox Rothschild, LLP
        100 Park Avenue, Suite 1500
        New York, New York 10017

  Parties may access this filing through the Court's electronic filing system


                                                  /s/ Rachel L. Horton
                                                  Rachel L. Horton