## SAPIR & FRUMKIN LLP

ATTORNEYS AT LAW

399 KNOLLWOOD ROAD, SUITE 310

WHITE PLAINS, NEW YORK 10603

WRITER'S E-MAIL: KWalker@sapirfrumkin.com

DONALD L. SAPIR
WILLIAM D. FRUMKIN*

KELLIE TERESE WALKER
DANIEL T. DRIESEN^
KATHRYN E WHITE**
EMILY A. ROSCIA

*ADMITTED IN N.Y. & CT.
**ADMITTED IN NY & N.J.
^ADMITTED IN N.Y. & MA.

TEL: (914) 328-0366
FAX: (914) 682-9128

OF COUNSEL
DAVID KRAMER

PARALEGAL
RACHEL L. HORTON

August 4, 2005

### *VIA UPS NEXT DAY AIR*

Keith R. McMurdy, Esq.
Grotta, Glassman & Hoffman, P.A.
75 Livingston Avenue
Roseland, New Jersey 07068

> **Re:** **Teamsters Local 445 Freight Division Pension Fund and Matter of**
> **Withdrawal Liability of Mid-Hudson Steel Corp.**
> **Mid-Hudson Steel Corp.'s June 1, 2005 Request for Information**
> **Our File No. 03-7418**

Dear Mr. McMurdy:

We represent Teamsters Local 445 Freight Division Pension Fund ("Local 445 Pension Fund" or the "Fund") in the above-referenced matter. By letters, dated February 1, 3 and March 28, 2005, Local 445 Pension Fund provided documents in response to Mid-Hudson Steel Corp.'s ("MSC") January 3, 2005 request for information regarding the withdrawal liability assessment against MSC. By e-mail of June 1, 2005, you requested additional information regarding the Fund's withdrawal liability assessment against MSC. Local 445 Pension Fund responds to MSC's requests, as follows:

> *Request No. 1:*
>
> May we have a copy of the 2002 Actuarial Valuation Report?
>
> *Response No. 1:*
>
> By letter, dated February 1, 2005, in response to MSC's request for "[a]ny annual financial

Keith R. McMurdy, Esq.                    -2-                    August 4, 2005

or actuarial reports prepared for years 2002, 2003 and 2004," we provided to MSC a copy of, *inter alia*, the Fund's 2002 Actuarial Valuation Report.

### Request No. 2:

How are asset values determined? On page 58 of the Fund rules and regulations, item (c)(3) refers to rules adopted by the Trustees. May we please have these rules for our calculations?

### Response No. 2:

Local 445 Pension Fund's actuary reports that the market value of assets is used in determining asset values, which is consistent with the other aspects of the method used to determine withdrawal liability as recommended by the actuary to the Fund's Trustees. By letter, dated February 1, 2005, in response to MSC's request for "[c]opies of all documentation used to calculate the withdrawal liability," we provided to MSC a copy of, *inter alia*, Article VIII (Withdrawal Liability) of the Local 445 Pension Fund Rules and Regulations, with Plan amendments.

### Request No. 3:

With regard to interest, it appears that the interest charged is the prime rate, yet the Fund's calculations assume 7 ½ percent. Why?

### Response No. 3:

Local 445 Pension Fund's actuary reports that the 7 ½ percent refers to the "interest rate assumption" utilized in computing the withdrawal liability installment payments owed by MSC to the Fund. The plan's actuary determines the rate of interest used in calculating an employer's withdrawal liability based on "actuarial assumptions and methods which, in the aggregate, are reasonable (taking into account the experience of the plan and reasonable expectations) and which, in combination, offer the actuary's best estimate of anticipated experience under the plan." § 4213 of the Employee Retirement Income Security Act (1974), as amended by the Multiemployer Pension Plan Amendments Act (1980), 29 U.S.C. § 1393(a)(1); *see Concrete Pipe & Prods. v. Constr. Laborers Pension Trust*, 508 U.S. 602, 632 (U.S. 1993)("The assumptions and methods used in calculating withdrawal liability are selected in the first instance not by the trustees, but by the plan actuary"). Based on reasonable actuarial assumptions and methods, and in accordance with the Fund's withdrawal liability rules, the Fund's actuary utilized 7 ½ percent as the interest rate assumption in determining MSC's withdrawal liability payments. (*See* response to Request No. 4 for explanation of how MSC's withdrawal liability payments are calculated).

The Fund's actuary reports that it is not aware of the "prime interest rate" being used in the withdrawal liability calculation. Although Article VIII of Local 445 Pension Fund's Rules and Regulations references the "prime interest rate," it is solely referred to under Section 8.5(d)(ii) of the

Keith R. McMurdy, Esq.                              -3-                              August 4, 2005

Rules and Regulations, which sets forth the interest rate charged on any withdrawal liability payment amount in default, *i.e.* "Interest shall be charged on any amount in default from the date the payment was due to the date it is paid at an annual rate equal to the prime rate charged by the Bank of New York on the first day of the calendar quarter preceding the due date of the payment."

### Request No. 4:

We also need a breakdown of how the payment amount was calculated. Our client's records of total annual contributions versus the Fund's calculations does not jibe.

### Response No. 4:

Under § 4129(c)(1)(C)(i) of the MPPAA, 29 U.S.C. § 1399(c)(1)(C)(i), a withdrawing employer is required to make an annual payment of withdrawal liability equal to a) the highest average annual number of contribution base units over a three (3) consecutive plan year period during the ten (10) plan years preceding the year of withdrawal and b) the employer's highest contribution rate under the plan during the ten (10) plan years ending with the year of withdrawal. Based on this calculation, an employer's annual withdrawal liability payment approximates the highest annual contributions made by the employer prior to withdrawal.

The Fund's actuary states that it based its breakdown of MSC's withdrawal liability based on the following: MSC's highest three (3) consecutive year contribution base unit average ($8,898) during the ten (10) plan years preceding the year of withdrawal, *i.e.* 1994 through 2003, multiplied by MSC's highest contribution rate ($3.80) during the ten (10) plan years ending with the year of withdrawal, *i.e.* 1994 through 2004, thus resulting in MSC's withdrawal liability payment in the amount of $33,812 annually or $2,817.70 per month.  The actuary reports that the highest three (3) consecutive year contribution base unit average is based on the following information obtained from the Fund office:

| Year | Total Contribution Hours |
|------|--------------------------|
| 1994 | 9,128.00 |
| 1995 | 9,234.75 |
| 1996 | 8,331.00 |

By letter, dated February 1, 2005, on behalf of the Local 445 Pension Fund and based on information supplied by the Fund office, we forwarded to you a chart which set forth MSC's total annual contribution base units and the highest contribution rate for the period from 1994 through 2004. We have been notified by the Local 445 Pension Fund that MSC's total annual contribution base units for year 1998 is to be revised from 8,420.00 CBUs to 8,420.50 CBUs. The Fund's actuary

Keith R. McMurdy, Esq.                    -4-                    August 4, 2005

reports that, although the total annual contribution base units for year 1998 has been revised from 8,420.00 to 8,420.50 CBUs, the withdrawal liability assessment against MSC will not change because the revised figure will not affect the highest three (3) consecutive year contribution base unit average.

Based on the highest three (3) consecutive year contribution base unit average, and the $3.80 contribution rate, the calculation for determining MSC's withdrawal liability payment is as follows:

| 8,898.00 hrs.[1] | | MSC's highest 3-year contribution average |
|---|---|---|
| | x | |
| $3.80 | | highest contribution rate |
| $33,812 | = | MSC's withdrawal liability payment per year ($2,817.70/month) |

In providing its response to MSC's June 1, 2005 request for information, Local 445 Pension Fund reserves the right to amend, correct, supplement or clarify any response provided. Further, Local 445 Pension Fund does not waive any privilege or protection to which it is entitled under law.

Please call me if you have any questions.

Very truly yours,

Kellie Terese Walker

KTW:aa

cc:    Fred Smit, Fund Chairman (via first class mail)
        Sharon Molinelli, Fund Administrator (via first class mail)
        Daniel E. Clifton, Esq. (via first class mail)

F:\APPLICAT\WP\TEAMSTER\Mid Hudson Steel Corp\Withdrawal Liability\l-McMurdy.08.02.05.wpd\dp

---

[1] 1994 [9,128] + 1995 [9,234.75] + 1996 [8,331] / 3 = $8,897.92 rounded off to $8,898.